UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61648-CIV-LENARD
MAGISTRATE JUDGE P.A. WHITE

CORNELIUS GREEN,                    :

          Plaintiff,               :        REPORT OF
                                            MAGISTRATE JUDGE
v.                                  :

PEMBROKE PINES POLICE
DEPARTMENT, et al.,                 :

          Defendants.              :
_____

## I.  Introduction

   Plaintiff Cornelius Green, currently housed at the Metro West Detention Center, has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for damages and other relief. (DE# 1). In the original complaint, the plaintiff alleged that on July 20, 2008, in connection with his arrest for grand theft, several City of Pembroke Pines police officers engaged in excessive force and/or failed to intervene to stop the other officers from beating him, causing severe head injuries. (DE# 1).

   A Preliminary Report (DE# 7) recommended that the complaint proceed against City of Pembroke Pines Police Officers James Darnowski, Keith Forseth, Christian Hemingway, Melodie Johnson, Jennifer Martin, Orville Velez-Ortega, and Walter Benjamin, but be dismissed as to the Pembroke Pines Police Department.  Green filed an amended complaint (DE# 15), wherein he did not raise any new constitutional claims or seek to add any defendants, but expanded upon the factual allegations surrounding the claim of unconstitutional force and added some photographic exhibits.  In a second amended complaint (DE# 19), Green sought to add City of Miramar Police Officer Christopher Dang as a defendant by alleging that Dang participated with the other officers in using excessive force and failing to intervene.  In a January 12, 2009 Report (DE# 41), the Undersigned recommended that the amended complaint and second amended complaint together comprise the operative complaint in this civil action.  Accordingly, the excessive force claim

against Dang in his individual capacity went forward.  (DE# 41). The District Court subsequently adopted the January 12, 2009 Report in its entirety.  (DE# 61).

According to the operative complaint (DE# 15, 19), around 7:00 p.m. on July 20, 2008, Pembroke Pines police dispatch received a call regarding an armed robbery.  Dispatch informed Hemingway of the location of the suspects' car.  Hemingway located the car, pulled along side the driver's side in an unmarked police vehicle, pointed a weapon at the driver, and stated, "Pull over asshole before I shoot your black ass."  (DE# 15, p. 4).  Hemingway's actions terrified the driver, thereby causing him to lose control of the car and crash.  Other officers joined Hemingway at the scene.  Green, who was sitting in the back passenger's side, was pulled out of the car by several (unnamed) officers, forced to the ground, repeatedly kicked in the face, and verbally assaulted. Green alleged that each named defendant was present and either participated in the attack or failed to intervene.  (DE# 15, 19).

Motions for summary judgment were filed by defendants Benjamin (DE# 89), Darnowski (DE# 90), Forseth (DE# 91), Hemingway (DE# 92), Johnson (DE# 93), Martin (DE# 94), Velez-Ortega (DE# 95), and Dang (DE# 104).[1]  Green subsequently filed a motion to dismiss the

---

[1]  Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Court held that summary judgment should be entered only against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a

complaint as to defendants Benjamin, Darnowski, Forseth, Johnson, Martin, and Velez-Ortega.  (DE# 108).  The Undersigned issued a June 23, 2009 Report recommending Green's motion to dismiss be granted, the complaint against the defendants named therein be dismissed without prejudice and their respective motions for summary judgment be dismissed as moot, and the case remain pending against Hemingway and Dang. (DE# 109).  The District Court issued an order adopting these recommendations.  (DE# 123).

In his motion for summary judgment, Hemingway argues that [1] the undisputed evidence shows that he did not use excessive force or witness any other officer use excessive force and [2] he is entitled to qualified immunity. (DE# 92, p. 2).  In support of his motion, Hemingway filed several exhibits including the Pembroke Pines Police Department's July 22, 2008 offense incident report (DE# 96-2); a transcript of the 911 call to dispatch (DE# 96-3); a transcript of Green's May 1, 2009 deposition (DE# 96-7); and affidavits executed by Hemingway (DE# 96-4), Dang (DE# 96-5), Walter (DE# 96-6), Martin (DE# 96-8), Darnowski (DE# 96-9),

---

genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc.).

    Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), an orders of instruction (DE# 98, 114) were entered, informing Green as a pro se litigant of his right to respond to the defendants' motions for summary judgment. The orders specifically instructed Smith regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

Velez-Ortega (DE# 96-10, 97-2), Johnson (DE# 96-11), and Forseth (DE# 96-12).   Green filed a response to the motion for summary judgment (DE# 112) and an affidavit in support thereof (DE# 113). Hemingway filed a reply to Green's response.   (DE# 115).

In Dang's motion for summary judgment, he also argues that [1] the undisputed evidence shows that he did not use excessive force and/or witness any other officer use excessive force and [2] he is entitled to qualified immunity. (DE# 104).   Dang attached the following exhibits: the July 22, 2008 offense incident report (DE# 105, p. 4-15), a transcript of the 911 call to dispatch (DE# 105, p. 16-22), Dang's affidavit (DE# 105, p. 23-25), the Miramar Police Department's incident/investigation report (DE# 105, p. 26-29), and excerpts from Green's deposition (DE# 105, p. 30-32).   Green's response to Hemingway's motion for summary judgment, with supporting affidavit, also served as a response to Dang's motion. (DE# 112-13).   After Dang filed a reply to Green's response (DE# 116), Green filed a second response (DE# 117), with the same supporting affidavit (DE# 118), wherein he only addressed Dang's motion for summary judgment.   Dang moved to strike Green's second response or grant Dang leave to reply to same.   (DE# 119).   Green filed a motion to change the heading on his second response to a supplemental response to motion for summary judgment and to grant Dang leave to file a reply. (DE# 120), together with a supplemental response (DE# 121).   Dang filed a motion in opposition to Green's supplemental response. (DE# 122).

## II.   Analysis

### Excessive Use of Force

As a preliminary matter, Hemingway and Dang both argue that summary judgment in defendants' favor is appropriate because, in his complaint and during his deposition, Green failed to identify which individual(s) violated his civil rights.   (DE# 92, p. 4-5; DE# 104, p. 5-6).   Hemingway points to the following exchange during Green's deposition.

> [Hemingway's Counsel]: Are you claiming that Hemingway did anything specifically to you as opposed to your other people?

> [Green]: I would imagine he was the one that helped snatch me
> out of the car.
> [Hemingway's Counsel]: You're imagining?
> [Green]: Listen, I can't say what officers did what.  All I
> know is, the only way I can come to, up with the person that
> did this is in the reports saying that he was at the car.

(DE# 96-7, p. 66).  Similarly, Dang relies on the following line of
questioning:

> [Dang's Counsel]: But you didn't see [Dang] at the time you
> were allegedly beaten?
> [Green]:   The only thing I can recollect and let you know is
> that I know those two [Hemingway and Dang] was (sic) at the
> car.  So, how can I get beat up.  I didn't beat myself up,
> sir.
> [Dang's Counsel]: I understand.  But I'm just trying to get an
> understanding of who you claim did what, and your testimony is
> you don't know.  You don't know who committed these acts.  You
> just know they were at the scene at some point, is that
> accurate?
> [Green]: That's accurate, yes.

(DE# 96-7, p. 88).

In support of their argument, both defendants rely on <u>Taylor v.
Police Officer Brockenbrough</u>, No. CIV.A. 98-6419, 2001 WL 1632146
(E.D. Pa. Dec. 20, 2001) wherein the court held that "in order to
establish a civil rights violation, those responsible for the
alleged violating conduct must be specifically identified." <u>Id.</u> at
*2.  In that case, Carlos Taylor was walking down the street when
a police cruiser (identified by number 18T1) pulled up and parked.
Although two officers exited the car, only one officer pushed
Taylor against the wall and beat him up. When Taylor learned from
police records that officers Brockenbrough and Martin were driving
cruiser number 18T1 at the time of the incident, he filed a §1983
claim against both officers.  During a lengthy discovery phase,
neither officer was deposed, nor did the officers execute
affidavits regarding the incident.  Taylor testified during his
deposition that he did not know which officer actually beat him.
When the officers moved for summary judgment, Taylor had no
"evidence from which a reasonable jury could determine whether it
was Brockenbrough or Martin who was responsible for unlawfully
beating and detaining Taylor." <u>Id.</u> As a result, the court granted

both motions and dismissed Taylor's complaint.  See also Sheikh v. Morales, No. 3:05CV495, 2006 WL 2223943 (D. Conn. July 31, 2006) (relying on Taylor, the court dismissed the complaint because, at the time the defendants moved for summary judgment, the plaintiffs could not identify which of five officers on duty committed the unlawful acts, notwithstanding the fact that the plaintiffs had a year to obtain this information through discovery); Seward v. City of Philadelphia, No. CIV.A. 00-3563, 2002 WL 563580 (E.D. Pa. April 11, 2002).

The facts in this case are distinguishable from those in Taylor, Sheikh, and Seward.  Admittedly, Green did not know the identity of his assailant when he filed his complaint or when he was deposed (at the outset of the discovery phase).  This is not fatal to his claim.  See Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) ("[W]hen . . . a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court.") (citing Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)); Brown v. Sikes, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000) ("Appellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint and have directed district courts to assist prisoners in discovering the identity of the proper defendants.").  Unlike the plaintiffs in Taylor, Sheikh, and Seward, Green learned that Hemingway was present at the scene and that Dang pulled him out of the car from the affidavits the officers executed and filed during the discovery phase.

Turning to the merits, the Supreme Court and the Eleventh Circuit have recognized that lawful arrests often involve force and injury. Graham v. Connor, 490 U.S. 386, 396 (1989)("the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); Rodriquez v. Farrell, 280 F.3d 1341, 1351 (11 Cir. 2002) ("the typical arrest involves some force and injury").  However, a claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its

"reasonableness" standard. Graham, 490 U.S. 386; Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11 Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11 Cir. 2002). Such an analysis requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interest alleged to justify the intrusion." Graham, 490 U.S. at 396 (quoting United States v. Place, 462 U.S. 696 (1983)). The factors to consider when balancing an arrestee's constitutional rights and the need for use of force include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. See also Vinyard, 311 F.3d at 1347; Lee, 284 F.3d at 1197. In determining whether the force applied was "reasonable" under the circumstances, the Court must examine: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied. Graham, 490 U.S. at 396; Vinyard, 311 F.3d at 1347; Lee, 284 F.3d 1998. Although the test applied by the Eleventh Circuit previously included a subjective prong, examining whether the force was applies maliciously, see, e.g., Leslie v. Ingraham, 786 F.2d 1533, 1536 (11 Cir. 1986), that factor was eliminated from the analysis by Graham and other cases establishing that the excessive force inquiry should be completely objective, thereby excluding consideration of the officer's intentions. Lee, 284 F.3d at 1198 n.7. Thus, "reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. Graham, 490 U.S. at 389.

In this case, Green testified to his version of the incident during his May 1, 2009 deposition (DE# 96-7) and in his June 24, 2009 affidavit. (DE# 113, 118). According to Green, Mike Woods drove Abner Booker and Green to a liquor store in Pembroke Pines. (DE# 96-7, p. 34). Woods remained in the car while Booker and Green entered the store. (DE# 96-7, p. 35). Booker began conversing with the cashier in order to prevent the cashier from

observing Green, however, Booker did not have a weapon.  (DE# 96-7, p. 37).  Green grabbed a case of vodka, exited the store, and got into the backseat of Woods's car.  (DE# 96-7, p. 37).  Booker got in the front seat with a case of stolen liquor.  (DE# 96-7, p. 38-39).  Shortly after they left the store, an unmarked police car driven by Hemingway caught up with them on Miramar Parkway.  Hemingway pulled along side Woods's door, raised his gun, and said "pull over asshole before I shoot your black ass."  (DE# 96-7, p. 48; DE# 113, ¶5-6).  Moments later, Woods crashed into a cement median.  (DE# 96-7, p. 46; DE# 113, ¶7).  Green sustained no injuries from the car crash.  (DE# 96-7, p. 49).

Immediately after the crash, Woods exited the car and laid down in the street, at which point an officer applied handcuffs.  (DE# 96-7, p. 82; DE# 113, ¶8).  Hemingway and Dang both took part in removing the suspects from the car.  (DE# 96-7, p. 88).  Without making any commands, Dang (along with several other unnamed officers) snatched Green out of the car, slammed him onto the ground, stepped on his face, and handcuffed him.  (DE# 113, ¶9; DE# 96-7, p. 73, 85).  Green was then punched and kicked once or twice.  (DE# 96-7, p. 75). Green did not try stand up or resist in any way.  (DE# 96-7, p. 73; DE# 113, ¶9).  Green testified during his deposition that he does not know whether Hemingway helped remove him from the car, as his face was pushed against the ground by a shoe and he had blood in his eyes, but knows Hemingway was next to the car and believes Hemingway likely took part in the beating.  (DE# 96-7, p. 53, 66, 88).

After the beating, officers sat Green on the side of the road for about thirty minutes, at which point he was driven to the hospital in a police cruiser.  (DE# 96-7, p. 57, 79-80).  Green had abrasions on his face and a tooth had to be removed at the hospital.  (DE# 96-7, p. 68-69).  During the deposition, Green introduced photographs reflecting his injuries which were taken the day after his arrest.  (DE# 96-7, p. 66-67).

In recounting the incident in his motion for summary judgment, Hemingway relies on his affidavit (DE# 96-4) and the incident offense report he completed two days after the arrest (DE# 96-2, p. 7-8).  According to Hemingway's affidavit, based on information

received from police dispatch, he pursued a car containing armed robbery suspects on Miramar Parkway. (DE# 96-4, ¶3). Soon after he called Miramar Police for assistance, a marked police cruiser pulled up behind his and the suspect's car and turned on the emergency lights. (DE# 96-4, ¶4) The driver refused to pull over and eventually crashed into a concrete median. (DE# 96-4, ¶5). At this point, Hemingway approached the driver's side of the suspect's car on foot, removed the driver (Woods), and, with the help of a Miramar officer, took Woods into custody. (DE# 96-4, ¶6). With respect to his contact with Green, Hemingway stated:

> I did not assist and was not involved in removing Green from the suspect vehicle. I had no physical contact with Mr. Green and never saw any law enforcement officer utilize any excessive force on him. In fact, I did not see Mr. Green after he was removed from the vehicle and while he was being handcuffed since he was on the other side of the suspect vehicle (i.e., the passenger side) while I was with the driver, Woods, on the driver's side.

(DE# 96-4, ¶7). Hemingway's affidavit is consistent with the narrative he provided in the June 22, 2008 incident offense report. (DE# 96-2, p. 7-8).[2]

Dang derives his version of events from a Miramar police report completed by Dang on July 22, 2008, the Pembroke Pines Police Department incident offense report, and his affidavit. (DE# 105). According to his affidavit, after observing Woods crash into the median, he "approached the vehicle and removed the rear-seat passenger – who was later identified as Cornelius Green. Green was directed to the ground by [Dang] and handcuffed. After Green was handcuffed, [Dang] assisted him to his feet. No unnecessary force was used by [Dang] or anyone else." (DE# 105, p. 25, ¶5). In addition, "[n]o Pembroke Pines officers assisted or were involved in removing Green from the suspect vehicle" or "had any physical contact with Green until after he was handcuffed and brought to his

---

[2]   In the report, Hemingway stated: "Suspect Woods came out of the vehicle and went to the ground. The suspect was then placed into handcuffs by a Miramar Officer and myself. I continued to clear the vehicle as I was unsure if the additional suspects exited the vehicle as I was positioned on the left driver's side." (DE# 96-2, p. 7-8).

feet in order to be transported from the scene." (DE# 105, p. 25, ¶6). Consistent with his affidavit, Dang stated in the police report that after Woods's car crashed into the median, Dang "approached the vehicle and detained Mr. Green who was occupying the rear passenger side of the vehicle until Pembroke Pines officers, who were also already on scene, could take him into custody." (DE# 105, p. 28). Dang includes additional facts in the "concise statement of undisputed material facts" section of his motion for summary judgment. Specifically, Dang alleges the following:

> Officer Dang ordered [Green] to get out of the vehicle and to lie on the ground, but [Green] ignored these instructions and remained seated in the vehicle. As a result, Officer Dang was forced to remove [Green] from the vehicle and place him on the ground. After [Green] was on the ground, Officer Dang instructed him to put his hands behind his back. [Green] did not comply with Officer Dang's instructions, and Officer Dang was forced to grab [Green's] hands and place hand-cuffs on Green.

(DE# 104, p. 3). In support of the foregoing, Dang cites page six of the offense incident report and paragraph 5 of his affidavit. Neither document supports Dangs additional allegations.

Nothing in the record supports Green's claim that Hemingway was involved in the actual beating. Hemingway's sworn statement provides that he was on the other side of the car dealing with Woods and did not remove Green from the car. Green provides no contradictory evidence. Accordingly, a summary judgment in Hemingway's favor on the use of force claim is proper.

With respect to Dang, Green concedes that Dang believed Green had been involved in a serious crime, namely, armed robbery. Green's evidence, which must be believed, is that Dang pulled him out of the car, threw him on the ground, stepped on his face, and punched him a few times. Green claims that Dang did not first ask Green to give himself up peacefully. In other words, Green posed no threat to anyone's safety and did not resist arrest or attempt to flee. See Graham, 490 U.S. at 396. Dang counters that he believed that Green may have had a firearm, did not use any force against Green

but simply pulled him out of the car and applied handcuffs after Green ignored Dang's command to exit the car and get on the ground.

In light of the foregoing, an attempt to resolve at summary judgment the issues and facts in dispute pertaining to the use of force during the encounter between Green and Officer Dang would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in Anderson v. Liberty Lobby, Inc., "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." 477 U.S. 242, 255 (1986)(citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Due to the existence of genuine issues of material fact, summary disposition of the §1983 excessive force claim against defendant Dang is not appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## Failure to Intervene

In a case in which excessive force is used, it is not necessary for police officers to actually participate in its use in order to be held liable under §1983. Rather, they can be held liable for their nonfeasance if they are present at the scene and fail to take steps to protect a victim from a fellow officer's use of excessive force. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985), and cases cited therein.

In an excessive force case such as this one, in which several officers are being sued, not because they were directly involved in applying the alleged force, but rather on the ground that they failed to protect the plaintiff from the use of excessive force, the Courts have held that the following is required for an officer to be held liable on that theory: (1) he or she must have observed or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent the harm from occurring. Carr v. Tatangelo, 338 F.3d 1259, 1274, n.27 (11 Cir. 2003) (observing, with regard to defendant

11

officer Mercer, that "it is not credible to event postulate that he
[Officer Mercer] had a reasonable opportunity to prevent the
shooting," where Mercer did not see the "rapidly escalating"
situation, and Mercer was some distance away when his fellow
officer shot the plaintiff/appellant Carr); Riley v. Newton, 94
F.3d 632, 635 (11 Cir. 1996) (holding, with regard to officer
Gisson who was sued on the ground that he failed to intervene to
protect plaintiff Riley from another officer's use of excessive
force, Gisson had no reason to suspect the use of excessive force
until after it occurred, and the obligation for him to take steps
to protect the plaintiff never arose) (quoting O'Neill v.
Kreminiski, 839 F.2d 9, 11-12 (2 Cir. 1988) for its holding that
"The three blows were struck in such rapid succession that Conners
had no realistic opportunity to prevent them. This was not an
episode of sufficient duration to support a conclusion that an
officer who stood by without trying to assist the victim became a
tacit collaborator."); Turner v. Scott, 119 F.3d 425, 429 (6 Cir.
1997). Cf. Anderson v. Branen, 17 F.3d 552, 557 (2 Cir. 1994)
(holding that in order for liability to attach there must have been
a realistic opportunity to intervene to prevent the harm; and that
the question whether an officer had sufficient time to intervene or
was capable of preventing the harm being caused by another officer
is an issue of fact for the jury, unless, considering all the
evidence, a reasonable jury could not possibly conclude otherwise)
(citing O'Neill, 839 F.2d at 11-12); Byrd, 783 F.2d at 1007
(vacating entry of summary judgment for a defendant officer, where
there was evidence that the officer was present during the
encounter in which the plaintiff was allegedly subjected to an
unprovoked beating by another officer)).

As a preliminary matter, a summary judgment in Dang's favor on
the failure to intervene claim is appropriate because it is Dang's
excessive use of force from which Hemingway failed to protect
Green.

According to Green's deposition testimony and affidavit, Dang
pulled him out of the car and beat him up for one to two minutes,
Hemingway was near the car, and Hemingway observed Green's injuries
after the beating. Hemingway's affidavit states that Hemingway was

taking Woods into custody when Green was removed from the vehicle and he did not interact with Green until after he was in handcuffs with abrasions on his face. Hemingway's sworn statement establishes that he did not observe the excessive force and did not have the opportunity to prevent the harm from occurring. See <u>Carr</u>, 338 F.3d 1259, 1274 n.27 (11 Cir. 2003). Green failed to uncover any evidence during the discovery phase to contradict Hemingway's version of events and failed to allege any facts establishing the two factors contained in <u>Carr</u>. Accordingly, a summary judgment in Hemingway's favor on the failure to intervene claim is also appropriate. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## Qualified Immunity[3]

When engaging in an analysis at the summary judgment stage as to whether a defendant may be entitled to qualified immunity, the court must take the facts in the light most favorable to the party asserting the injury. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>Robinson v. Arrugeta</u>, 415 F.3d 1252, 1257 (11 Cir. 2005); <u>Pace v. Capbianco</u>, 283 F.3d 1275, 1285 (11 Cir. 2002). Qualified immunity, under appropriate circumstances, serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority, if their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11 Cir. 2002). <u>See also</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11 Cir. 2002); <u>Flores v. Satz</u>, 137 F.3d 1275 (11 Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11 Cir. 1996).

---

[3] It is not necessary to determine whether Hemingway is entitled to qualified immunity as the Undersigned has decided that a summary judgment is appropriate on the merits of Green's excessive use of force claim and failure to intervene claim against Hemingway.

In this case, Dang has overcome his initial burden as he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. <u>See</u> <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1205 (11 Cir. 2009).

Once the defendant has satisfied the initial burden, the plaintiff bears the burden of proving, "first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." <u>Oliver v. Fiorino</u>, 2009 WL 3417869 (11 Cir. Oct. 26, 2009).

Relevant under the first prong, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." <u>Id.</u> Courts "analyze a claim of excessive force under the Fourth Amendment's 'objective reasonableness' standard." <u>Id.</u> The Eleventh Circuit recently held:

> In order to determine whether the use of force is "objectively reasonable," we carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake" under the facts of the particular case. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (internal citations and quotations omitted). We measure the quantum of force employed against these factors-the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197-98 (11 Cir. 200). Notably, we consider the officers' actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1249 (11 Cir. 2004), recognizing that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396-97.

<u>Id.</u>

With respect to the second prong, in order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

14

violates that right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001).
"[I]f case law, in factual terms, has not staked out a bright line,
qualified immunity almost always protects the defendant." <u>Smith v.
Mattox</u>, 127 F.3d 1416, 1419 (11 Cir. 1997).  "However, in some
cases, [the court] may find that the right is clearly established,
even in the absence of case law. One such instance is where the
case is one of 'obvious clarity'-i.e., where the officer's conduct
'lies so obviously at the very core of what the Fourth Amendment
prohibits that the unlawfulness of the conduct was readily apparent
to [the official], notwithstanding the lack of fact-specific case
law' on point." <u>Oliver</u>, 2009 WL 3417869 (quoting <u>Vinyard v.
Wilson</u>, 311 F.3d 1340, 1355 (11 Cir. 2002)).

In this case, the facts alleged in Green's deposition and
affidavit, which must be accepted as true, establish that Dang
violated Green's Fourth Amendment right to be free from excessive
force during an arrest. <u>See Oliver</u>. Dang did not give Green the
opportunity to exit the car and lay on the ground. Instead, Dang
snatched Green out of the car, threw him on the ground, stepped on
his face, and punched him several times.  Because Green's right to
be free from  excessive force during an arrest is a right that a
reasonable officer would understand in light of <u>Graham</u> and its
progeny, Dang is not protected by qualified immunity. <u>See Saucier</u>,
533 U.S. at 201-02.  This conclusion is bolstered by the fact that
the unlawfulness of Dang's alleged actions was readily apparent.
<u>See Oliver</u>.

### III.  <u>Recommendation</u>

Based on the foregoing, it is recommended that:

1.   Hemingway's motion for summary judgment (DE# 92) be
     granted as to the excessive use of force claim and
     failure to intervene claim and the cause of action
     against Hemingway be dismissed.

2.   Dang's motion for summary judgment (DE# 104) be denied as
     to the excessive use of force claim and granted as to the
     failure to intervene claim.

3.   Dang's motion to strike (DE# 119) be denied.

15

4.      Green's motion to accept his supplemental response in its correct form (DE# 120) be granted.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 1st day of December, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:

Cornelius Green, Pro Se
Florida DOC #646038
Metro West Detention Center
13850 NW 41 Street
Miami, FL 33178

E. Bruce Johnson
Scott David Alexander
Johnson Anselmo Murdoch Burke Piper & Hochman, PA
2455 E Sunrise Boulevard
Suite 1000
Fort Lauderdale, FL 33304-0220

Daniel Lawrence Abbott
Weiss Serota Helfman
200 E. Broward Blvd.
Suite 1900
Ft. Lauderdale, FL 33301
954-763-4242